**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Susan Dobrzeniecki, | ) | |
| Thomas Dobrzeniecki Sr., | ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| City of Sauk Village, | ) | |
| Rebecca Vela Salisbury, | ) | |
| James Vela, | ) | |
| Robert Grossman, | ) | |
| Timothy Holevis, | ) | |
| Christopher Mueller, | ) | |
| St. James Hospital, | ) | |
| Dr. FNU Birun, | ) | |
| Dr. Joseph R.Yates, | ) | |
| John Doe (Security Guard), and | ) | |
| John Doe Security Company, | ) | |
| Defendants. | | |

## COMPLAINT

For their Complaint against Defendants Rebecca Vela Salisbury, James Vela, Robert Grossman, Timothy Holevis, Christopher Mueller, St. James Hospital, Dr. FNU Birun, and Dr. Joseph R. Yates, Plaintiffs Susan Dobrzeniecki and Thomas Dobrzeniecki Sr. (collectively, the "Dobrzenieckis"), by their attorneys, Valorem Law Group LLC, allege as follows:

## NATURE OF THE ACTION

1. From Monday, November 9, 2009, through Wednesday, November 11, 2009, Rebecca Vela Salisbury, the then-Chief of Police of the Sauk Village Police Department (hereafter, the "Department"), and her brother, James Vela, who was also an officer with the Department, violated Ms. Dobrzeniecki's fundamental constitutional rights by illegally causing her involuntary commitment first to psychiatric isolation at St. James Hospital and then to a mental institution. They did so without any reasonable grounds and they did so on the basis of a

callously cynical pretext – a mother's expression of distress upon learning that her son had been shot.

2.      On the same day that Salisbury and Vela caused Ms. Dobrzeniecki to be held against her will at St. James Hospital, Defendants Timothy Holevis, Robert Grossman, Christopher Mueller conducted an illegal raid on the Dobrzeniecki home.  Without a warrant, without consent, and having received keys that had been illegally removed from Ms. Dobrzeniecki's purse, Defendants Holevis, Grossman, and Mueller invaded and searched the Dobrzeniecki home.  This was a second, independent violation of the Dobrzenieckis' rights.

3.      The staff of St. James Hospital also breached several duties to and violated the rights of Ms. Dobrzeniecki.  These Defendants failed to follow the procedures required by Illinois law to protect against the abuse of the involuntary commitment process.

4.      Defendants' gross and egregious violations of the Dobrzenieckis' rights caused them and their family grievous distress, anguish, and suffering on a day when they had already learned that their son had been shot.  Their misconduct prevented Ms. Dobrzeniecki from being with, or even learning news of, her wounded son, as well as from caring for her husband.

5.      In this lawsuit, the Dobrzenieckis assert claims under 42 U.S.C. § 1983 against the Sauk Village Defendants for violating their rights under the Fourth Amendment of the U.S. Constitution to be free from unreasonable searches and seizures.  Ms. Dobrzeniecki also asserts claims for false imprisonment, medical malpractice, and intentional infliction of emotional distress against the Hospital Defendants under Illinois law.  Finally, Ms. Dobrzeniecki also includes a claim for intentional infliction of emotion distress against Defendants Salisbury and Vela for the patient care they improperly caused to be imposed upon her at Defendant St. James

Hospital (the "Hospital") and at Riveredge Hospital, a psychiatric facility that specializes in the treatment of behavioral health, located in Forest Park, Illinois ("Riveredge").

## THE PARTIES

6.      During all times relevant to this Complaint, Plaintiff Susan Dobrzeniecki was a resident of Sauk Village, Illinois.

7.      During all times relevant to this Complaint, Plaintiff Thomas Dobrzeniecki Sr. was a resident of Sauk Village, Illinois.

8.      During all times relevant to this Complaint,

    A.  Defendant Rebecca Vela Salisbury was the Chief of Police of the Department. Salisbury is now Assistant Chief of Police of the Department.

    B.  Defendant James Vela was Sergeant with the Department.

    C.  Defendant Timothy Holevis was a Detective Sergeant with the Department.

    D.  Defendant Robert Grossman was a Detective in the Department.

    E.  Defendant Christopher Mueller was a police officer with the Department.

    F.  These five defendants will be referred to collectively as the "Sauk Village Defendants."

9.       During all times relevant to this Complaint,

    a.  Defendant St. James Hospital was a corporation in Chicago Heights, Illinois.

    b.  Defendant Dr. FNU Birun was, on information and belief, an attending emergency room doctor at the Hospital.

    c.  Defendant Dr. Joseph R. Yates was an emergency room doctor at the Hospital.

    d.  These three defendants will be referred to collectively as the "Hospital Defendants."

10.     On information and belief, during all times relevant to this Complaint, the John Doe Security Company provided security services for the Hospital.   The name of the company for whom the security guard identified in paragraph 22 worked is not known at this time, but investigation into the actual name of the company continues.

11.     John Doe was the security guard identified in paragraph 22, who was employed by either John Doe Security Company or by the Hospital and who assisted the police in wrongfully subjecting Ms. Dobrzeniecki to involuntary commitment.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. §§ 1331.  The Court has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

## FACTS

### The Dobrzeniecki Family

14.     From July 2003 to the present (with the exception of approximately January 29 to June 29, 2011), Plaintiff Susan Dobrzeniecki has worked for Sauk Village as a building inspector or an administrative clerk.  Ms. Dobrzeniecki has survived two bouts of breast cancer, one in 1998 and one in 2004.  She sees a doctor every six months and an oncologist every year.  She has no prior history of mental illness or psychological problems of any kind.  To the contrary, Ms. Dobrzeniecki is a clear-thinking, strong, and hard-working woman who has battled adversity every day since at least her first bout of cancer in 1998 and has done so with tremendous grace.

15.     Mr. Dobrzeniecki suffers from multiple sclerosis ("MS") and was first diagnosed with MS in or about 2006.  Mr. Dobrzeniecki has been using a wheelchair since at least 2007 and has been fully wheelchair bound since approximately early 2009.  He depends on his wife and his son Peter Dobrzeniecki to administer his medication and otherwise care for him on a daily basis.

16.     During the relevant time, the Dobrzenieckis owned and lived in a house at 21765 Peterson Avenue, Sauk Village, Illinois (the "Dobrzeniecki family home").  During all relevant times, the Dobrzenieckis' son Peter Dobrzeniecki also resided within the Dobrzeniecki family home.  The Dobrzenieckis also have a second son, Thomas Dobrzeniecki, Jr. ("Tom Jr."), who does not reside at the Dobrzeniecki family home.

## Sue Dobrzeniecki's Conflict With The Sauk Village Police

17.     Prior to November 9, 2010, Sue Dobrzeniecki had several "run-ins" or conflicts with the Department.  In approximately the summer of 2005, Ms. Dobrzeniecki criticized the Department during an interview with a television news reporter.  Ms. Dobrzeniecki faulted the police's lack of responsiveness as part of a discussion of neighborhood crime problems.  Ms. Dobrzeniecki's comments were aired on a local evening newscast.  From that point forward, the Department targeted and harassed Ms. Dobrzeniecki.

18.     The Dobrzeniecki family's other run-in with the Department occurred in approximately 2008.  Peter Dobrzeniecki is a registered sex offender because he pled guilty to one count of statutory rape involving his longtime girlfriend and consensual sex that occurred when he was 18 years old and she was 16 years old.  Sometime after Peter registered as a sex offender, the Department sought to prevent Peter from living with his family on the ground that it would violate the state law prohibiting a sex offender from living within a certain distance

from a park.  Ms. Dobrzeniecki challenged the Department's conclusion that her son could not live in the family home and indeed proved that the Department's efforts to do so were baseless. Ms. Dobrzeniecki established that the Department had erred in calculating the distance between the family home and the park in question and that Peter was able to reside in the family home lawfully.  After this conflict over whether Peter could remain in the Dobrzeniecki family home, the Department's targeting and harassment of Ms. Dobrzeniecki continued, and on information and belief, several members of the Department, including but not limited to Defendants Salisbury, Vela, and Grossman, harbored a grudge against Ms. Dobrzeniecki and her family.

**Ms. Dobrzeniecki Learns Her Son Has Been Shot In The Face**

19.     Early on the morning of November 9, 2009, Peter Dobrzeniecki was shot in the face by an armed robber who was fleeing a gas station in Chicago Heights, Illinois.

20.     At approximately 10:30 that morning, in the parking lot outside of Ms. Dobrzeniecki's place of employment, Defendant Salisbury notified Ms. Dobrzeniecki that her son had been shot.

21.     Upon learning that her son had been shot, Ms. Dobrzeniecki became agitated and distressed.  In her excited state, she uttered exclamations to the effect of "I'm a good person. Why does this keep happening to me?  If something happens to my son, I'll just die."

22.     Sherry Jasinski, Ms. Dobrzeniecki's supervisor and the Director of Community Development for Sauk Village, drove Ms. Dobrzeniecki to St. James Hospital in Chicago Heights to see her son.

**The Police Illegally Seize Ms. Dobrzeniecki And Her Property At The Hospital**

23.     While Ms. Dobrzeniecki was visiting her son at the hospital, Defendants Salisbury and Vela and a Hospital security guard entered her son's hospital room and took

Ms. Dobrzeniecki into the hallway, insisting she accompany them. When Ms. Dobrzeniecki entered the hallway, Defendants Salisbury, Vela, and the Hospital security guard took her into a room on the same floor as her son's hospital room. Defendant Vela then searched Ms. Dobrzeniecki and her purse. Vela located _Mr._ Dobrzniecki's MS medication in _Ms._ Dobrzeniecki's purse and threatened her with a felony for possession of these drugs.

24.     Ms. Dobrzeniecki then tried to return to her son's hospital room, and Defendant Vela and a Hospital employee would not allow her to return to see her son. Defendants Salisbury and Vela then told Ms. Dobrzeniecki that she needed to go downstairs to see hospital personnel. Ms. Dobrzeniecki opposed seeing the hospital personnel as unnecessary but ultimately agreed to do so provided that she was accompanied by her friend and co-worker Sherry Jasinski. Salisbury and a Hospital employee stated that if Ms. Dobrzeniecki accompanied then she would be able to return to see her son and to go home to provide her husband with his lunch and medication.

25.     When Ms. Dobrzeniecki entered the emergency room area on the first floor of the Hospital, she was led into a room. Salisbury demanded Ms. Dobrzeniecki's coat, purse, and work phone, and falsely represented that she would give all three to Sherry Jasinski, Dobrzniecki's friend. Shortly afterward, the door to the hospital room in which she had been placed was locked.

26.     Ms. Dobrzeniecki protested that there was nothing wrong with her, repeatedly asked why she was being held in the Hospital room, and asked why her belongings had been removed from her. Salisbury and a Hospital nurse repeatedly and falsely told Ms. Dobrzeniecki that she could not leave and that they had a court order to keep her there. In fact, there was no court order or any other reasonable basis to hold Ms. Dobrzeniecki against her will. Rather,

Defendant Salisbury and Vela (with the assistance of a Hospital security officer and/or other Hospital personnel) seized Ms. Dobrzeniecki and initiated involuntary commitment procedures as part of their ongoing targeting and harassment of the Dobrzenieckis.

27.     The Defendants' conduct described above further agitated and distressed Ms. Dobrzeniecki, who wanted to be with her son and to return home to care for her ill husband.

28.     As noted above, at some point during their improper seizure of Ms. Dobrzeniecki, Defendant Salisbury took Ms. Dobrzeniecki's purse and keys, which included keys to her home. There was no authorization or any other reasonable basis for Salisbury to seize Ms. Dobrzeniecki's purse and her keys. In addition, Salisbury misrepresented that the purse would be given to Ms. Dobrzeniecki's friend Sherry Jasinski, but Salisbury did not do so.

**The Sauk Village Police Illegally Enter And Search The Dobrzeniecki Home**

29.     At approximately 3:30 that same day, Defendants Grossman, Holevis, and Mueller illegally entered the Dobrzeniecki home. On information and belief, Defenadnts let themselves into the Dobrzeniecki home by using the keys that Salisbury had improperly taken from Ms. Dobrzeniecki at the Hospital. Mr. Dobrzeniecki, who is and was at that time wheel-chair bound, was the only person at the Dobrzeniecki home at that time. He did not let these Defendants into the Dobrzeniecki home, nor did he consent to their entry at any time.

30.     Defendant Grossman told Mr. Dobrzeniecki that the police had a court order to enter the house, but when Mr. Dobrzeniecki asked for a copy of the Order, Grossman refused to show Mr. Dobrzeniecki the order or any other authorization for Defendants' entry. The statement that Defendants had a court order was false.

31.     After entering the Dobrzeniecki home, the three Defendant Officers searched the Dobrzeniecki home, purportedly for a gun used in the shooting of Peter Dobrzeniecki. There

was no reasonable basis for believing that the gun used in a shooting in Chicago Heights was in the Dobrzeniecki home and the Defendant Officers simply used the purported gun search as a pretense to conduct the illegal search. The officers searched Peter's bedroom and several other areas of the Dobrzeniecki home.

32.     Mr. Dobrzeniecki repeatedly asked Defendants how they got into his house and repeatedly asked them to leave his home. He also asked them what they were looking for and where his son Peter and wife Susan Dobrzeniecki were at time. Defendants refused and continued to refuse to answer Mr. Dobrzeniecki's questions.

33.     Defendants Grossman, Holevis, and Mueller did not have a warrant to search the Dobrzeniecki family home.

34.     Defendants Grossman, Holevis, and Mueller did not have any reasonable basis or any other authorization to enter or to search the Dobrzeniecki family home. Neither Mr. Dobrzeniecki nor Mrs. Dobrzeniecki, nor anyone else with authority, consented to entry of or a search of the Dobrzeniecki family home.

**The Hospital Improperly Holds Ms. Dobrzeniecki**

35.     For almost 14 hours, Ms. Dobrzeniecki was held unlawfully and against her will at the Hospital by the Hospital Defendants and other Hospital personnel. During that time, the Hospital Defendants and personnel subjected Ms. Dobrzeniecki to a battery of invasive and embarrassing tests and kept her under video and audio surveillance. The Hospital Defendants repeatedly failed to observe the procedural protections against the abuse of involuntary commitment proceedings required by Illinois law. Their treatment of Ms. Dobrzeniecki also fell far short of the standard of care and constituted medical malpractice.

36.     Ms. Dobrzeniecki's illegal confinement at the Defendant Hospital began November 9, 2009, at approximately 1:45 p.m.  Hospital records clearly indicate that she was "upset being in [a] locked room" and "[i]nsisted she has to go home to be with ill husband" and further indicated that she "does not want to be here," insists "she's not crazy," and was "[u]ncooperative [with] procedures."  Hospital records further indicate that the Hospital Defendants "placed [her] in seclusion," removed her belongings, and purported to read to her some sort of "[r]estriction of rights," all against her will.

37.     During that time, Ms. Dobrzeniecki was compelled to (1) undergo a medical exam, for which she had to strip naked and provide details about her medical history and personal habits; (2) provide a urine sample for drug testing; and (3) undergo a psychiatric evaluation.  Ms. Dobrzeniecki was also offered, and declined, psychotropic medication.

38.     The purported grounds for Ms. Dobrzeniecki's involuntary and emergency commitment was suicidal ideation, apparently based on the statement she made in the parking lot when she heard her son had been shot. There was, however, no reasonable grounds for Ms. Dobrzeniecki's involuntary and emergency commitment on this or any other basis.  The lack of reasonable grounds  is evident from, among other things, her hospital records.  Although those records repeat Salisbury's allegation that Ms. Dobrzeniecki "has stated that 'she wanted to die,'" these records do not list any other signs of a suicidal ideation, nor do they provide the context in which the purported statement made to Defendant Salisbury had been made.

39.     To the contrary, Ms. Dobrzeniecki's records indicate that she has "no [homicidal] ideation," is not "hearing voices," and that she insists very specifically "that she does not feel like she wants to die now."  Rather, she specifically and repeatedly told the Defendants that she wanted to see her son and care for her sick husband.

**The Hospital Fails To Follow The Procedures That**
**Protect Against Wrongful Involuntary Commitments**

40.     A citizen of this country has a fundamental liberty interest, flowing from the rights guaranteed by the U.S. Constitution, to be free from a wrongful involuntary commitment. To protect these rights from abuse, Illinois law prescribes a set of specific procedures governing involuntary commitments.  Given the importance of the rights involved, strict compliance with these procedures is required.  The Hospital Defendants and other hospital personnel repeatedly and wrongfully failed to observe these legal procedures.

41.     To subject someone to emergency involuntary commitment, the Illinois Revised Statutes, Title 405, Section 5/3-601 ("Section 3-601") required either:  (1) the Sauk Village Defendants to prepare a specific petition for involuntary commitment (hereafter, the "Sauk Village Petition"), or (2) the Hospital Defendants to prepare a specific petition for involuntary commitment and to list one or more of the Sauk Village Defendants as witnesses to the petition (hereafter, the "Hospital Petition") (collectively, "the Petition").  On information and belief, neither the Sauk Village Defendants nor the Hospital Defendants prepared the required Petition, in violation of the law.  In addition, Ms. Dobrzeniecki has repeatedly requested that the Hospital turn over a copy of any Petition in its possession that would qualify as the required Petition under Section 3-601, and the Hospital has repeatedly failed and refused to produce any such document.

42.     Illinois Revised Statute, Title 405, Section 3-602 ("Section 3-602") requires that a Petition under Section 3-601 be accompanied by a certificate executed by a physician, qualified examiner, or clinical psychologist (hereafter, the "Hospital Certificate").  The Hospital Certificate must state that the patient in question is subject to involuntary admission and requires immediate hospitalization on the basis of a recent examination; the Hospital Certificate must

state the clinical observations and other factual information relied upon in reaching a diagnosis; and the Hospital Certificate must provide a statement as to whether the patient was advised of her rights under Section 3-208. On information and belief, no such Hospital Certificate was ever prepared in relation to Ms. Dobrzeniecki and, if such a Certificate was prepared, the Hospital has nevertheless failed and refused to provide a copy of it to Ms. Dobrzeniecki.

43. Illinois Revised Statute, Title 405, Section 3-208 ("Section 3-208") requires the person conducting the examination of the patient under Section 3-206 to inform the patient of the purpose of the exam, the patient's right to remain silent instead of participating in the examination, and the possibility that any statements made by the patient may be used against her in a hearing regarding her commitment. On information and belief, contrary to this law, no such mental health examination was ever conducted, as required by law. Moreover, even if such a mental health examination was conducted, the Hospital failed to inform Ms. Dobrzeniecki of her rights under Section 3-208. To the contrary, one or more members of the Hospital staff repeatedly told Ms. Dobrzeniecki falsely that there was a court order to hold her.

44. Illinois Revised Statute, Title 405, Section 3-609 ("Section 3-609") provides a person subjected to involuntary, emergency commitment with other rights. These rights include but are not limited to the right to complete no less than two telephone calls at the time of her admission to persons of her choosing. Ms. Dobrzeniecki was not allowed to make any phone calls by the Hospital Defendants at the time of her admission to involuntary commitment. To the contrary, Defendant Salisbury and a Hospital nurse removed Ms. Dobrzniecki's work phone from her in an attempt to interfere with her rights under Section 3-609.

45. Illinois Revised Statute, Title 405, Section 3-206 ("Section 3-206") required one of the Hospital Defendants and/or another member of the Hospital staff to give Ms. Dobrzeniecki

the address and telephone number of the Guardianship and Advocacy Commission (the "Advocacy Commission") and, if after being informed of the Advocacy Commission, Ms. Dobrzeniecki requested assistance in contacting the Advocacy Commission, the Hospital, through one of its employees, was required to provide such assistance. The Hospital Defendants failed to present Ms. Dobrzeniecki with contact information for the Advocacy Commission at all (as required by law); they failed to provide such information within 12 hours of Ms. Dobrzeniecki admission (also as required by law); they failed to give Ms. Dobrzeniecki the opportunity to request assistance in contacting the Advocacy Commission (as also required by law).

46. For any emergency involuntary commitment that takes place in Cook County, Illinois Revised Statute, Title 405, Section 3-605 ("Section 3-605") requires that if a patient is transferred to a mental health facility that that patient be transported by the Cook County Sheriff. In order for the Sheriff to conduct such a transport, however, the Sheriff must be presented with both a valid Certificate and a valid Petition. Neither Defendant Yates nor any other Hospital employee contacted the Cook County Sheriff or arranged for the Sheriff's involvement in the transportation of Ms. Dobrzeniecki to a mental health facility. Indeed, on information and belief, because they had failed to create the required Certificate and Petition, they could not have presented the Sheriff with the authorization required for him or Deputy Sheriffs to take Ms. Dobrzeniecki into custody and transport her. Instead of calling for the Cook County Sheriff to transport Ms. Dobrzeniecki, as required by law, Defendant Yates and/or other Hospital personnel arranged for "Superior Ambulance" to transport Ms. Dobrzeniecki, in violation of Section 3-605.

47.     In addition, Defendant Yates falsely characterized Ms. Dobrzeniecki's transfer as voluntary.  Ms. Dobrzeniecki's chart contains an Authorization for Transfer form, a form that requires Ms. Dobrzeniecki's signature in order for the form to be effective and for the transfer to be legal.  Ms. Dobrzeniecki refused to sign and did not sign the form that was tendered to her, and yet Defendant Yates nevertheless continued the process of transferring Ms. Dobrzeniecki out of the Hospital.  Ultimately, Defendant Yates did cause Ms. Dobrzeniecki's transfer from the Hospital to Riveredge without the required authorization and notwithstanding Ms. Dobrzeniecki's refusal to sign the required authorization.

**The Hospital Transfers Ms. Dobrzeniecki To Riveredge**

48.     On November 10, 2009, at around 3:30 a.m., and approximately 14 hours after Mr. Dobrzeniecki was first improperly and illegally seized by one or more of the Defendants, the Defendant Hospital and Defendant Yates transferred Ms. Dobrzenieki to Riveredge.  As noted above, Riveredge is a psychiatric facility that specializes in the treatment of behavioral health.

49.     Ms. Dobrzeniecki was subjected to a detailed battery of additional tests required by Riveredge, but almost immediately after those tests were completed, Ms. Dobrzeniecki was informed that she would be discharged into her own care and with no prescribed medication.

**Salisbury Demoted From Chief Of Police Position**

50.     On information and belief, approximately two days after these events, Defendant Salisbury was demoted from Chief of Police to Assistant Chief of Police.

51.      On information and belief, shortly after these events, Defendant Halevis was demoted from head detective to sergeant.

**Damages**

52.     Ms. Dobrzeniecki's wrongful involuntary commitment was an extremely traumatic experience.  That it came immediately on the heels of her son being shot in the face during an armed robbery, and was accompanied by a police raid on her home, exacerbated the pain and suffering experienced by her and her family.

53.     She was held against her will for almost two full days, during which time she was subjected to invasive mental and physical examination and kept under surveillance.

54.     As a result of Defendants' improper and illegal conduct, Ms. Dobrzeniecki was also kept from seeing and caring for her son during the time he was being treated for gunshot wounds in the hospital.  She was not even allowed to learn the extent or severity of his injuries, which were potentially life-threatening.

55.     Ms. Dobrzeniecki was also prevented from caring for, or arranging the care of, her disabled husband, which she has done daily since he became wheelchair bound.

56.     Defendants' actions were also an extremely traumatic experience for Mr. Dobrzeniecki.  Because he relies on his wife's care, the fact that she was held against her will for almost two full days was highly traumatic for him.  Moreover, Mr. Dobrzeniecki received scattered pieces of information about the fact that his son Peter had been shot in the face during an armed robbery, and by illegally removing Ms. Dobrzeniecki from her son's Hospital room, Mr. Dobrzeniecki was unable to receive timely and appropriate reports about the condition of his son, information Ms. Dobrzeniecki could have provided had she not been illegally seized by Defendants.

57.     Mr. Dobrzeniecki also suffered emotional trauma from the illegal search of his home.  These experiences caused grievous distress and pain and suffering for the Dobrzenieckis and their family.

58.     To add insult to injury, after the incident, the Hospital repeatedly sent invoices to Ms. Dobrzeniecki for her "stay" at the Defendant Hospital.

## CAUSES OF ACTION

### COUNT I

**Plaintiff Susan Dobrzeniecki's Section 1983 Claim Against
Defendants Salisbury, Vela, and John Doe for Illegal Seizure of Her Person**

59.     Plaintiff incorporates and re-alleges paragraphs 1 through 56 above as though fully set forth herein.

60.     Defendant Salisbury's and Vela's November 9, 2009 seizure of Ms. Dobrzeniecki constituted an illegal seizure in violation of her rights under the Fourth Amendment of the U.S. Constitution (hereafter, "Fourth Amendment Rights").

61.     Defendants Salisbury and Vela lacked any reasonable grounds for initiating involuntary commitment proceedings against Ms. Dobrzeniecki.

62.     On information and belief, Defendants Salisbury and Vela initiated involuntary commitment proceedings against Ms. Dobrzeniecki in retaliation for her having embarrassed the the Sauk Village Defendants and other members of the Department and for other conflicts that they have had with her personally.

63.     Defendant Salisbury's and Vela's conduct injured Ms. Dobrzeniecki by, among other things, causing her grievous pain and suffering.  Ms. Dobrzeniecki was held against her will for almost two days, subjected to invasive testing and surveillance, prevented from being

with her son after he suffered life-threatening injuries, and prevented from caring for her wheelchair-bound husband.

64.     In assisting the officers to illegally detain Ms. Dobrzeniecki, John Doe was acting under color of law.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### The Dobrzenieckis Section 1983 Claim Against
### Defendant Salisbury for Illegal Seizure of Ms. Dobrzeniecki's Purse and Keys

65.     Plaintiff incorporates and re-alleges paragraphs 1 through 64 above as though fully set forth herein.

66.     Defendant Salisbury's November 9, 2009 seizure of Ms. Dobrzeniecki's purse and keys constituted an illegal seizure in violation of Ms. Dobrzeniecki's Fourth Amendment Rights.

67.     Defendant Salisbury lacked any reasonable grounds to seize Ms. Dobrzeniecki's purse and keys.  She lacked a warrant and was not acting pursuant to a lawful arrest.  Nor did Ms. Dobrzeniecki consent to Defendant Salisbury's taking possession of her purse and keys and only consented to Defendant Salisbury giving her purse and keys to Ms. Dobrzeniecki's friend Sherry Jasinski.

68.     The illegally-seized keys were used by other Defendant officers to illegally enter the Dobrzeniecki home.  This entry was followed by an illegal search of the Dobrzeniecki home.

69.     On information and belief, Defendants Salisbury illegally seized Ms. Dobrzeniecki's keys in retaliation for Ms. Dobrzeniecki having embarrassed Defendant Salisbury and other members of the Department and because of other conflicts that Defendant Salisbury had with Ms. Dobrzeniecki.

17

70.     Defendant Salisbury's Fourth Amendment violation in relation to Ms. Dobrzeniecki's keys and purse injured the Dobrzenieckis in numerous ways: it caused grievous pain and suffering to the Dobrzenieckis.  Ms. Dobrzeniecki was deprived of her personal property in connection with an illegal and wrongful initiation of involuntary commitment proceedings against her.  That personal property was then used against both Dobrzenieckis against their will when the Sauk Village Defendants conducted an illegal search of their home.

71.     WHEREFORE, Plaintiff prays for relief as set forth below.

### COUNT III

**The Dobrzeniecki's Section 1983 Claim Against**
**All Sauk Village Defendants for Illegal Entry Into Their Home**

72.     Plaintiff incorporates and re-alleges paragraphs 1 through 71 above as though fully set forth herein.

73.     On November 9, 2009, Detective Grossman, Detective Sergeant Holevis, and Officer Mueller of the Sauk Village Police illegally entered and searched the Dobrzeniecki family home.

74.     The police's conduct constituted an illegal seizure in violation of the Dobrzenieckis Fourth Amendment rights.

75.     Detective Grossman, Detective Sergeant Holevis, and Officer Mueller lacked any authorization to enter and search the Dobrzeniecki family home.  The police officers acted without a warrant and without any consent.  They falsely stated that they possessed a court order in order to conduct the search, but refused and failed to provide Mr. Dobrzeniecki with a copy of the purported court order.  At a later time, they falsely stated that they undertook the entry into the Dobrzeniecki family home in order to conduct a well-being check of Mr. Dobrzeniecki.  At a

still later time, these three officers also falsely asserted that they undertook the search of the Dobrzeniecki family home in order to conduct a well-being check of Mr. Dobrzeniecki.

76.    On information and belief, Detective Grossman, Detective Sergeant Holevis, and Officer Mueller acted against the Dobrzenieckis in retaliation for Ms. Dobrzeniecki having embarrassed them and other members of the Department on prior occasions.

77.    The illegal Fourth Amendment search of the Dobrzeniecki's family home injured the Ms. Dobrzenieckis by, among other things, causing them grievous pain and suffering.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### Plaintiff Susan Dobrzeniecki's Claim for False Imprisonment, Under Illinois Law, Against the Hospital Defendants and John Doe Security Company

78.    Plaintiff incorporates and re-alleges paragraphs 1 through 77 above as though fully set forth herein.

79.    On November 9, 2009, the Hospital Defendants held Ms. Dobrzeniecki in a locked room at the Hospital against her will for approximately 14 hours and did so without following the involuntary commitment procedures required by the Illinois state law.

80.    On November 10, 2009, the Hospital Defendants transferred Ms. Dobrzeniecki to Riveredge, a mental health facility, and did so without following the involuntary commitment procedures required by the Illinois state law.

81.    The Hospital Defendants lacked any reasonable belief that Ms. Dobrzeniecki was properly subject to involuntary commitment proceedings.

82.    Defendant Yates falsely represented that Ms. Dobrzeniecki's transfer to a mental health facility was pursuant to her consent, when in fact Ms. Dobrzeniecki refused to sign the consent form and never consented to the transfer.

83.     The false imprisonment identified above injured Ms. Dobrzeniecki by, among other things, causing them grievous pain and suffering.  Ms. Dobrzeniecki was held against her will for two days, subjected to invasive testing and surveillance, prevented from being with her son after he suffered life-threatening injuries, and prevented from caring for her wheelchair-bound and sick husband.

WHEREFORE, Plaintiff prays for relief as set forth below.

<u>COUNT V</u>

**Plaintiff Susan Dobrzeniecki's Claim for Intentional Misrepresentation, <u>Under Illinois Law, Against Defendant Yates and the Defendant Hospital</u>**

84.     Plaintiff incorporates and re-alleges paragraphs 1 through 83 above as though fully set forth herein.

85.     Defendant Yates falsely represented that Ms. Dobrzeniecki's transfer to a mental health facility was pursuant to her consent, when in fact Ms. Dobrzeniecki refused to sign the consent form and never consented to the transfer.

86.     The false statement identified above injured Ms. Dobrzeniecki by, among other things, causing them grievous pain and suffering.  Ms. Dobrzeniecki was transferred to Riveredge against her will based on the false statement of voluntariness utilized by Defendant Yates.

87.     Under the doctrine of respondeat superior, the Defendant Hospital is legally responsible for the tort undertaken by Defendant Yates.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT V

### Plaintiff Susan Dobrzeniecki's Claim for Medical Malpractice
### Against Defendant Birun and the Defendant Hospital

88.     Plaintiff incorporates and re-alleges paragraphs 1 through 87 above as though fully set forth herein.

89.     The Hospital Defendants failed to use the requisite standard of care and committed medical malpractice by involuntarily holding and treating Ms. Dobrzeniecki against her will at the Hospital.

90.     The Hospital Defendants failed to use the requisite standard of care and committed medical malpractice by involuntarily holding and treating Ms. Dobrzeniecki without following the procedures for involuntary commitment required by the State of Illinois, including but not limited to failing to: (a) fill out the required Petition; (b) fill out the required Certificate; (c) conduct the required medical inquires necessary to complete the required Certificate; (d) inform Ms. Dobrzeniecki of her rights under Illinois law; (e) allow Ms. Dobrzeniecki to make two telephone calls; (f) use the Cook County Sheriff to transport Ms. Dobrzeniecki to a mental health facility.

91.     The conduct of the Hospital Defendants set forth above injured Ms. Dobrzeniecki by, among other things, causing her grievous pain and suffering.

WHEREFORE, Plaintiff prays for relief as set forth below.

### JURY DEMAND

92.     Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Susan Dobrzeniecki and Thomas Dobrzeniecki Sr. pray that the

Court enter judgment against Defendants and in favor of Plaintiffs on all counts alleged above,

and award the following relief:

A. Compensatory damages according to proof;

B. Attorneys fees under 42 U.S.C. § 1988;

C. All compensable costs;

D. Prejudgment interest at the maximum permitted legal rate;

E. Post-judgment interest at the maximum permitted legal rate; and

F. Such other relief as this Court deems just and proper.

Dated:   November 8, 2011

SUSAN DOBRZENIECKI
THOMAS DOBRZENIECKI SR.

By:      /s/ Stuart Chanen
         One of Their Attorneys

Stuart J. Chanen
VALOREM LAW GROUP LLC
35 East Wacker Drive, Suite 3000
Chicago, IL 60601
(312) 676-5460 (Telephone)
(312) 676-5499 (Facsimile)
Stuart.Chanen@valoremlaw.com