IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN DOBRZENIECKI, and<br>THOMAS DOBRZENIECKI SR.,<br><br>Plaintiffs,<br><br>v.<br><br>REBECCA VELA SALISBURY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 11 C 7956<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In their eight-count Second Amended Complaint filed on February 17, 2012 (Dkt. No. 30 ("2d Am. Compl.")), plaintiffs Susan Dobrzeniecki ("Susan") and Thomas Dobrzeniecki ("Thomas") (collectively "the Dobrzenieckis") alleged various Fourth Amendment and tort claims against three distinct groups of defendants: (1) the Village of Sauk Village ("the Village"), Assistant Chief of Police Rebecca Vela Salisbury[1] ("Salisbury"), Sergeant James Vela ("Vela"), Detective Robert Grossman ("Grossman"), Detective Sergeant Timothy Holevis ("Holevis"), and Officer Christopher Mueller ("Mueller") (collectively "Village Defendants"); (2) the St. James Hospital ("the Hospital"), Dr. Heidi Brown[2] ("Brown"), and Dr. Joseph R.

---

[1] Salisbury's exact position at the time of the events alleged in the Second Amended Complaint remains somewhat unclear.
[2] Dr. Brown's correct first name is Heidi, but she was mistakenly referred to as "Dr. Heather Brown" in the caption and body of the Second Amended Complaint. (*See* Dkt. No. 42.)

1

Yates ("Yates") (collectively "Hospital Defendants"); and (3) John Doe ("John Doe Guard") and John Doe Security Company (collectively "John Doe Defendants").[3]

Now pending before the court is a "Motion to Dismiss the Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6)" filed by the Village Defendants and joined by the Hospital Defendants. (Dkt. No. 80 ("Defs.' Mot."); *see also* Dkt. No. 86.) Pursuant to Rule 12(d), on September 11, 2012, the court converted the pending motion to a Rule 56 motion for summary judgment. (*See* Dkt. No. 86.) For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

The principal facts, as alleged in the Second Amended Complaint, are set forth in the court's April 27, 2012 memorandum opinion and order.[4] In the pending motion, Defendants contend that the Dobrzenieckis' claims should be dismissed on the grounds of judicial estoppel, arguing that "the claims at bar arose during the pendency of the Plaintiffs' Chapter 13 Bankruptcy . . . and were not disclosed to the Bankruptcy Trustee." (Defs.' Mot. ¶¶ 1-2.) In the alternative, Defendants contend that the Dobrzenieckis lack standing to pursue claims that rightfully belong to the Dobrzenieckis' bankruptcy estate. (Id. ¶ 3.)

The following facts relevant to Defendants' pending motion are not in dispute. The Dobrzenieckis filed for Chapter 13 bankruptcy in the Northern District of Illinois on February 5, 2008, listing $97,000 in assets and $120,921.00 in liabilities in bankruptcy case number 08-02632 ("2008 Bankruptcy Case"). (Dkt. No. 88 ("Defs.' 56.1(a)(3) SMF") ¶¶ 1-2.) On April 2,

---

[3] The John Doe Defendants have never been served with process in this case and plaintiffs are hereby given notice that the John Doe Defendants are sua sponte dismissed pursuant to Federal Rule of Civil Procedure 4(m) and will remain dismissed unless served on or before 2/25/13.
[4] The court previously addressed the sufficiency of the Dobrzenieckis' allegations in *Dobrzeniecki v. Salisbury*, No. 11 C 7956, 2012 WL 1531278 (N.D. Ill. Apr. 27, 2012) (Holderman, C.J.).

2008, the Dobrzenieckis' bankruptcy plan was approved by Bankruptcy Judge Jack B. Schmetterer. (*Id.* ¶ 5; *see also* Defs.' Ex. 3.) Under the bankruptcy plan, the Dobrzenieckis were ordered to make monthly payments of $350 to their creditors. (*Id.* ¶ 6; *see also* Defs.' Ex. 2, at D.1.)

According to their Second Amended Complaint, between November 9, 2009, and November 11, 2009, the Dobrzenieckis were harmed in several ways that gave rise to multiple claims—which they estimate to be worth approximately $1,000,000—against the Village Defendants, the Hospital Defendants, and the John Doe Defendants. (2d Am. Compl. Counts I-VIII; *see also* Defs.' 56.1(a)(3) SMF ¶ 14.) The Dobrzenieckis did not disclose these alleged claims to the bankruptcy court at the time the claims arose, or at any other time during the course of the 2008 Bankruptcy Case. (Defs.' 56.1(a)(3) SMF ¶ 13.)

After March 22, 2010, the Dobrzenieckis stopped making their court-ordered monthly payments. (Defs.' Ex. 6.) On July 14, 2010, Judge Schmetterer granted the trustee's motion to dismiss the Dobrzenieckis' bankruptcy petition for failure to make the required payments. (Defs.' 56.1(a)(3) SMF ¶¶ 9-10.) The Dobrzenieckis' bankruptcy case was dismissed on October 29, 2010. (*Id.* ¶ 12.)

Approximately twelve months later, on November 8, 2011, the Dobrzenieckis filed their initial complaint in this civil lawsuit. (Dkt. No. 1 ("Pl.'s Compl.").) Defendants' pending motion to dismiss was filed on September 6, 2012.

In response to Defendants' motion, the Dobrzenieckis rely on Susan's sworn affidavit, stating that she "did not understand that the bankruptcy laws required me to amend my bankruptcy schedules to include a potential civil claim against the Defendants because I had not filed any claim against the Defendants before [the bankruptcy case] was dismissed." (*See* Dkt.

3

No. 91 ("Susan Aff.") ¶ 10.) Susan further attests that she and Thomas never spoke with their initial bankruptcy lawyer after their plan was approved in April 2008, and that she did not tell her current attorneys in the instant lawsuit about the bankruptcy proceeding. (*Id.* ¶ 8, 12.) Susan attests that she never intended to deceive the bankruptcy court or to "deprive our creditors of the chance to benefit from an award of damages in this case." (*Id.* ¶¶ 14, 15.)

Susan also noted in her affidavit her intent to re-file for Chapter 13 bankruptcy protection, including an explicit disclosure of "(1) the claims pending in this lawsuit as contingent and unliquidated claims, and (2) Defendants' pending summary judgment motion." (Id. ¶¶ 17-18.) A review of bankruptcy court filings[5] shows that Susan and Thomas filed a new petition for Chapter 13 bankruptcy protection on October 30, 2012 ("2012 Bankruptcy Case"), and thereafter disclosed their pending civil claims—valued as "unknown"—and Defendants' pending summary judgment motion in the Schedule B filed with the bankruptcy court on November 13, 2012. (*See In re Thomas J. Dobrzeniecki and Susan Dobrzeniecki*, 12-42956 (Bankr. N.D. Ill.); Dkt. Nos., 1, 11.)

## LEGAL STANDARD

A movant is entitled to summary judgment if he or she can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" exists as to any such material fact when "the evidence is such that a reasonable jury could return a verdict for the non-moving

---

[5] Courts may take judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012).

party." *Id.* All of the evidence, as well as the reasonable inferences that may be drawn from the evidence, are viewed in the light most favorable to the nonmovant. *O'Leary v. Accretive Health Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Defendants seek summary judgment on two grounds. First, Defendants argue that the Dobrzenieckis should be judicially estopped from pursuing their civil rights and tort claims because they failed to disclose those claims to the bankruptcy court. In the alternative, Defendants assert that the Dobrzenieckis lack standing to pursue these claims because the claims properly belong to the bankruptcy estate. Because "both Article III standing and prudential standing are threshold determinants of the propriety of judicial intervention," *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 748 (7th Cir. 2007) (internal quotation marks omitted), the court begins its analysis with the question of standing.[6]

## DISCUSSION

1. Standing

"When judicial estoppel is premised on a failure to schedule a lawsuit in a prior bankruptcy proceeding, a court must first determine whether the former debtor has standing to bring suit." *Smith v. Am. Gen. Life Ins. Co.*, 544 F. Supp. 2d 732, 734 (C.D. Ill. 2008) (Mills, J.). Defendants argue that the Dobrzenieckis lack prudential standing in this case because they are not the "real party in interest," as required under the Federal Rules of Civil Procedure. (*See* Dkt. No. 94 ("Defs.' Reply") at 7 (citing Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."))).) Specifically, Defendants argue that the Dobrzenieckis'

---

[6] The distinction between prudential and constitutional standing is significant, and the inquiries must be kept separate: a plaintiff who has constitutional standing may lack prudential standing, and vice versa. *See FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). It is undisputed that the Dobrzenieckis have constitutional standing in this case.

5

pending civil claims are property of their 2008 Bankruptcy Case estate, and that the Dobrzenieckis lack standing to pursue their claims in the name of the estate.

Defendants did not fully develop their argument regarding standing in their initial motion, and stated in a conclusory fashion:

> 3. In the alternative, the claim is the property of the Plaintiffs' bankruptcy estate. *See e.g.*, *Calvin v. Potter*, No. 07 C 3056, 2009 WL 2588884, at *2 (N.D. Ill. Aug. 20, 2009) [(Kendall, J.)]. As a consequence, the Plaintiffs lack standing to pursue the suit and it should be dismissed pursuant to Rule 12(b)(1).

(Defs.' Mot. ¶ 3.) Moreover, Defendants did not refer to the issue of standing at all in their six-page "Memorandum in Support of the Police Officer Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(1) and Rule 12(b)(6)." (Dkt. No. 77 ("Defs.' Mem.").) Although Defendants did dedicate one page of their reply brief to the issue of standing, arguments developed for the first time in a reply brief are considered waived. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 428 (7th Cir. 2005) ("The argument is more developed in Harper's reply brief, but this is too little, too late, for '[a]rguments raised for the first time in a reply brief are [also] waived.'") (citations omitted); *accord Citizens Against Ruining The Environment v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) (finding that a one-sentence statement in an opening brief, later developed more fully in the reply brief, constituted wavier). Because Defendants can, and did, waive their standing argument, *see RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010) ("[p]rudential standing issues are subject to waiver"), Defendants' motion for summary judgment on the grounds of the Dobrzenieckis' purported lack of standing is denied.

Even addressing Defendants' standing argument on the merits, the court finds that the Dobrzenieckis have standing to pursue their pending civil claims in this lawsuit despite their past and pending bankruptcy petitions.

When a Chapter 13 petition is filed, a new "estate" is created. *See In re DiGregorio*, 458 B.R. 436, 442 (Bankr. N.D. Ill. 2011). "The estate is made up of all the debtor's property at the time the case commences. The estate is broadly inclusive, sweeping in a wide array of property rights and interests held by the debtor." *Id.* Generally, debtors have a duty to report any interest they hold in property, "'even if they believe their assets are worthless or are unavailable to the bankruptcy estate.'" *U.S. v. Van Allen*, 524 F.3d 814, 822 (7th Cir. 2008) (quoting *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992)). Property acquired by a debtor after the commencement of a Chapter 13 case, but before the case is closed, becomes property of the estate. *In re Willett*, 544 F.3d 787, 791 (7th Cir. 2008) (citing 11 U.S.C. § 1306(a)(1)). Because the Dobrzenieckis' alleged claims against Defendants arose during the pendency of their 2008 Bankruptcy Case, these claims, even though contingent, were assets that properly belonged to the 2008 Bankruptcy Case estate.

The 2008 Bankruptcy Case, however, was dismissed in July 2010, because the Dobrzenieckis failed to make the requisite payments on their plan. Upon dismissal of the 2008 Bankruptcy Case, all assets of the estate revested in the Dobrzenieckis. *See* 11 U.S.C. § 349(b)(3) ("Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."); *see also In re Statistical Tabulating Corp. Inc.*, 60 F.3d 1286, 1288 (7th Cir. 1995) ("The objective of § 349 is to restore all property rights, insofar as is practicable, to their positions when the case was filed.") (citations omitted) (internal quotation marks omitted). Judge Schmetterer's order dismissing the 2008 Bankruptcy Case is consistent with this statutory result, and does not "order[ ] otherwise." (*See* Defs.' Ex. 7.) Accordingly, standing to pursue the pending causes of action

7

does *not* lie "with the Trustee of the 2008 Bankruptcy Case" now, in 2013, as argued by Defendants. (Defs.' Reply at 7.)

After dismissal of the 2008 Bankruptcy Case, the Dobrzenieckis were free to file a subsequent bankruptcy petition, which they did in the 2012 Bankruptcy Case. *See* 11 U.S.C. § 349(a) ("[D]ismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title."). Although the Dobrzenieckis' pending civil claims remain part of the 2012 Bankruptcy Estate until the trustee affirmatively abandons them, Chapter 13 debtors are nevertheless permitted to pursue claims on behalf of the estate. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2nd Cir. 1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n. 2 (3d Cir.1992); *Hernandez v. Forest Preserve Dist. of Cook County, Ill.*, No. 08-cv-5731, 2010 WL 1292499, at *3 (N.D. Ill. Mar. 29, 2010) (Dow, J.); *Calvin*, 2009 WL 2588884, at *2. "Ruling otherwise would conflict with the explicit language of [Federal Rule of Bankruptcy Procedure] 6009 that the 'trustee or debtor in possession may . . . prosecute any action or proceeding in behalf of the estate before any tribunal.'" *Cable v. Ivy Tech State College*, 200 F.3d 467, 473 (7th Cir. 1999) (quoting Fed. R. Bankr. P. 6009).

Because the Dobrzenieckis have represented to both this court and the bankruptcy court that they plan to pay back their creditors in the 2012 Bankruptcy Case with any recovery from this lawsuit, this case is distinguishable from the facts of *Calvin*. *See Calvin*, 2009 WL 2588884, at *3 ("Calvin's active misrepresentation in her bankruptcy proceedings demonstrates that she is *not* bringing her discrimination claims *on behalf of* or *for the benefit of* her bankruptcy estate.")

(emphases in original). This court is therefore not persuaded that summary judgment is appropriate in favor of Defendants on the merits of their standing argument.

2. Judicial Estoppel

Defendants' main argument is that the court should apply the equitable doctrine of judicial estoppel to prevent the Dobrzenieckis from reaping the benefit of taking inconsistent positions in the 2008 Bankruptcy Case and the civil lawsuit pending before this court. The doctrine of judicial estoppel has evolved over time primarily to "protect the judicial system against manipulative litigants." *Laroche v. LTV Steel Co. Inc.*, No. 96 C 0738, 1998 WL 102633, at *1 (N.D. Ill. Feb. 28, 1998) (Williams, J.). Judicial estoppel "instructs that having obtained a judgment in a case on some ground a litigant cannot turn around and in another case seek a judgment on an inconsistent ground." *U.S. v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001).

The Supreme Court, in *New Hampshire v. Maine*, articulated three factors that "typically inform the decision whether to apply the doctrine in a particular case," while acknowledging that the doctrine of judicial estoppel is "not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). First, the party's position in the current case must be clearly inconsistent with an earlier position taken by the same party. *Id.* Second, the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (citations omitted). Finally, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

In addition to the interests of the parties and the judicial system, courts applying the doctrine of judicial estoppel in the context of a prior bankruptcy proceeding must also consider the interests of the creditors. As Chief Circuit Judge Frank H. Easterbrook has explained,

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. [Plaintiff's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [tort] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [Plaintiff] has been doing behind their backs. Creditors gypped by [Plaintiff's] maneuver are hurt a second time by [the application of judicial estoppel]. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.

*Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit."); *Rainey v. United Parcel Service*, 466 Fed. App'x 542, 545 (7th Cir. 2012) (unpublished opinion) ("Preventing Rainey from bringing his claims would undermine the interests of his creditors and defeat the district court's intent that Rainey be able to pursue the discrimination claims if he reopened his bankruptcy case.").

In this case, the creditors in the 2008 Bankruptcy Case were wronged by the Dobrzenieckis' failure to disclose their purported claims against Defendants. To the extent these same creditors have an interest in the 2012 Bankruptcy Case, assuming they have not yet been paid off, this wrong has been righted by permitting the creditors of the 2012 Bankruptcy Case an interest in the pending civil claims. Preventing the creditors of the 2012 Bankruptcy Case from sharing in any potential recovery would have the effect of unfairly harming innocent third parties. *Accord Lujano v. Town of Cicero*, No. 07 C 4822, 2012 WL 4499326, at *13 (N.D. Ill.

Sept. 28, 2012) (Finnegan, M.J.) (declining to apply judicial estoppel in large part because plaintiff "is pursuing the litigation claims as a debtor in possession and on behalf of the estate"); *Swearingen-El v. Cook County Sheriff's Dep't*, 456 F. Supp. 2d 986, 991 (N.D. Ill. Oct. 16, 2006) (Bucklo, J.) (declining to apply judicial estoppel when plaintiff "properly reopened his bankruptcy case and is presently pursuing this suit for the benefit of his creditors"). When a bankruptcy trustee has not abandoned an interest in the debtor's legal claims and the estate itself has not engaged in "contradictory litigation tactics," as with the 2012 Bankruptcy Case, "the elements of judicial estoppel are not satisfied." *Cannon-Stokes*, 453 F.3d at 448.

Moreover, Defendants themselves would not suffer an "unfair detriment" if the court were to allow the Dobrzenieckis' civil claims to proceed. *New Hampshire*, 532 U.S. at 750. Simply put, Defendants have not been prejudiced by the Dobrzenieckis' failure to disclose assets in the dismissed 2008 Bankruptcy Case. Defendants' interest in enforcing the doctrine of judicial estoppel is indirect, asserted on behalf of the creditors and the court. As discussed above, the court is not convinced that enforcing the doctrine of judicial estoppel is in the best interest of the creditors or the judicial system as a whole in this case.

The court need not decide whether the Dobrzenieckis received an unfair advantage from their failure to disclose their causes of action in the 2008 Bankruptcy Case, or whether their actions should be excused as the result of "inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.") (internal quotation marks and citation omitted). As explained above, because the Dobrzenieckis' bankruptcy creditors did not take inconsistent positions before the court, the court finds that the equities in this case lie in favor of denying Defendants' motion for summary judgment on the grounds of judicial estoppel.

11

This court is mindful of the importance of full disclosure in bankruptcy proceedings, and cautions the Dobrzenieckis, and all debtors, that "dishonest debtors are in no way guaranteed an opportunity to save a lawsuit from dismissal simply by disclosing concealed assets after they are discovered." *Lujano*, 2012 WL 4499326, at *13.

## CONCLUSION

For the reasons set forth above, Defendants' "Motion to Dismiss the Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6)" (Dkt. No. 80), converted to a Rule 56 motion for summary judgment on 9/11/12, is denied. The plaintiffs, however, are ordered to file on or before 2/26/13 a Third Amended Complaint to correct the misnomer regarding defendant Dr. Heidi Brown and to eliminate the defendants "John Doe [Security Guard]" and "John Doe Security Company" unless service on those defendants is made and return thereof is filed on or before 2/25/13. The defendants named in the Third Amended Complaint are to file their respective answers thereto on or before 3/12/13. The discovery stay entered on September 11, 2012 (Dkt. No. 86) is lifted. The dates set in the 6/26/2012 scheduling order (Dkt. No. 73) are vacated. Counsel are to confer and file a revised Form 52 on or before 3/12/13. The case is set for entry of a revised schedule on 3/14/13 at 9:00 a.m.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 11, 2013